IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUANITA HALL, | No. CIV.S-04-1181 DAD |
| Plaintiff, | |
| v. | <u>ORDER</u> |
| JO ANNE B. BARNHART, Commissioner of Social Security, | |
| Defendant. | |
| _____/ | |

This social security action was submitted to the court, without oral argument, for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. For the reasons explained below, the decision of the Commissioner of Social Security ("Commissioner") is affirmed.

**PROCEDURAL BACKGROUND**

Plaintiff Juanita Hall applied for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act (the "Act"), respectively. (Transcript (Tr.)

1

at 153-56, 432-34.)  The Commissioner denied plaintiff's applications initially and on reconsideration.  (Tr. at 135-39, 142-43, 437-41, 444-45.)  Pursuant to plaintiff's request, a hearing was held before an administrative law judge ("ALJ") on February 21, 2002, at which time plaintiff was represented by counsel.  (Tr. at 76-98.)  In a decision issued on June 26, 2002, the ALJ determined that plaintiff was not disabled.  (Tr. at 58-65.)  The Appeals Council granted plaintiff's request for review of that decision and remanded the matter for further proceedings.  (Tr. at 44-47.)

On January 7, 2003, a second hearing occurred before an ALJ and plaintiff again was represented by counsel.  (Tr. at 99-120.)  In a decision issued on June 27, 2003, that ALJ determined that plaintiff was not disabled.  (Tr. at 21-30.)  The ALJ entered the following findings:

> 1. The claimant met the disability insured status requirements of the Act on July 18, 2000, the date the claimant stated she became unable to work, and continues to meet them through the date of this decision.
>
> 2. The claimant has not engaged in substantial gainful activity since the alleged onset date.
>
> 3. The medical evidence establishes that the claimant has severe seizure-like activity, back pain, and depressive disorder, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.
>
> 4. The claimant's subjective allegations are not borne out by the overall record and are found not to be fully credible.

       5.    The claimant has the residual functional capacity for unskilled light work with only superficial interpersonal contact, and no excellent vision required, and she must take the appropriate seizure precautions.

       6.    The claimant is 43 years old, which is defined as a younger individual (20 CFR 404.1563 and 416.963).

       7.    The claimant has a limited education (20 CFR 404.1564 and 416.964).

       8.    The claimant has no transferable work skills.

       9.    Vocational expert testimony establishes that the claimant's impairment does not prevent the claimant from performing her past relevant work as a factory sorter and in housekeeping (20 CFR 404.1565 and 416.965).

      10.   Vocational expert testimony establishes that significant numbers of other jobs do exist in the national economy which the claimant could be expected to perform, considering her age, education, past work experience and residual functional capacity. Examples include factory production worker.

      11.   The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 404.I 520(t) and 416.920(t).

(Tr. at 29-30.)  The Appeals Council declined review of the ALJ's decision on May 24, 2004.  (Tr. at 9-17.)  Plaintiff then sought judicial review, pursuant to 42 U.S.C. § 405(g), by filing the complaint in this action on June 14, 2004.

/////

/////

3

**LEGAL STANDARD**

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Morgan, 169 F.3d at 599; Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

/////

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920. See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). This five-step process can be summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is conclusively presumed disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Yuckert, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

**APPLICATION**

The ALJ at the second administrative hearing in this matter relied on the testimony of a vocational expert in finding that

5

plaintiff is capable of performing her past relevant work as well as other work in the national economy.  Plaintiff maintains in her motion for summary judgment that the ALJ's hypothetical question to the vocational expert was flawed in that it did not reflect all of plaintiff's limitations.[1]  Plaintiff advances four specific arguments in this regard.  First, plaintiff asserts that the ALJ failed to include in his hypothetical question posed to the vocational expert the frequency and effects of plaintiff's alleged seizures.  Second, plaintiff contends that the ALJ improperly rejected the opinion of Liezelle Jurgens, M.D., one of plaintiff's treating physicians, that plaintiff is unable to work.  Third, plaintiff maintains that the ALJ's hypothetical question failed to include the specific limitation that plaintiff is precluded from working alone due to her seizures.  Fourth, plaintiff argues that the hypothetical question posed did not account for plaintiff's alleged mental limitations.  The court addresses plaintiff's arguments below.

Beginning with plaintiff's first argument, the ALJ admittedly did not make any findings with respect to the frequency or effects of plaintiff's alleged seizures.  However, such findings were unnecessary in light of the ALJ's finding that plaintiff's seizure activity is adequately controlled with medication.  That finding is

---

[1] An ALJ's hypothetical question must accurately set out all of the limitations and restrictions of the claimant.  See Magallenes v. Bowen, 881 F.2d 747, 756-57 (9th Cir. 1989); Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988); see also Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001)("An ALJ is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence.").

6

noted more than once in the ALJ's decision (Tr. at 25, 28) and is supported by substantial evidence.

For example, February 1, 2001, medical treatment notes indicate that plaintiff was taking Topamax,[2] which she was tolerating well, and that she had experienced no seizures since her last outpatient clinic visit two months earlier. (Tr. at 303.) April 13, 2001, examination notes indicate that plaintiff was still taking Topamax and that her seizures were "stable." (Tr. at 311, 317.) A July 20, 2001, medical treatment note indicates that plaintiff "had had a couple of seizure episodes" because she was not taking her medication regularly. (Tr. at 352.) A August 13, 2001, letter from a neurologist to one of plaintiff's treating physicians indicates that plaintiff was on Topamax and "doing much better" and that she had not had any seizures since the two episodes in July. (Tr. at 358, 468.) That physician indicated that plaintiff was "doing fairly well" on Topamax. (Tr. at 360.) October 5, 2001, treatment notes indicate that plaintiff was still on Topamax and that she had "one seizure one week ago." (Tr. at 380.) December 20, 2001, treatment notes concern only urinary tract problems and reflect no complaints of seizures. (Tr. at 363.) Treatment notes from January, 2002 indicate that plaintiff continued on Topamax and no seizures were noted. (Tr. at 380.) In March of 2002 plaintiff was seen for lumbar

---

[2] Topamax "is indicated as adjunctive therapy for the treatment of adults with partial onset seizures." Physicians' Desk Reference 2058 (52d ed. 1998). Depakote, which is referred to herein, is indicated for the treatment of manic episodes associated with bipolar disorder, epilepsy and migraines. Id. at 430.

7

radiculitis and bronchitis.  (Tr. at 383-84.)  Treatment notes from that examination reflect that plaintiff at that time was taking the medication Depakote for her alleged seizure disorder and no seizures are mentioned.  (Id.)  Other treatment notes covering the period January through May, 2002, indicate that plaintiff has occasional mild episodes referred to as "blank outs."  (Tr. at 463-65.)  An October 9, 2002, treatment note concerns allergies and back pain and makes no mention of seizures.  (Tr. at 449.)  A December 5, 2002, note mentions "light-headed episodes but no seizures."  (Tr. at 460.) January and February, 2003, treatment notes specifically mention "no seizures."  (Tr. at 458-59.)

In short, there is relevant evidence in the record that a reasonable mind might accept as adequate to support the ALJ's finding that plaintiff's seizure activity is adequately controlled with medication.  Therefore, plaintiff's argument that the ALJ failed to take into account the frequency and effects of plaintiff's alleged seizures in forming his hypothetical question must be rejected.  See Lewis v. Apfel, 236 F.3d 503, 513 (9th Cir. 2001)(holding that specific findings regarding nature, extent and frequency of seizures were unnecessary where the ALJ found seizures well-controlled by medication).

Plaintiff's next argument is that the ALJ improperly rejected the opinion of Liezelle Jurgens, M.D., one of plaintiff's treating physicians, that plaintiff is unable to work.  It is well-established that the medical opinion of a treating physician is entitled to special weight.  See Fair v. Bowen, 885 F.2d 597, 604

(9th Cir. 1989); Embrey, 849 F.2d at 421.  "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830 (citing Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987)).  "At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." Id. (citing Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)).  "Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Id. (citing Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)).

The opinion of Dr. Jurgens relied upon by plaintiff is found in a very brief letter addressed "To Whom It May Concern." (Tr. at 253.)  The letter is dated September 29, 2000, and reads as follows:

> Mrs. Juanita Hall is an established patient at this clinic.  She has been diagnosed with a seizure disorder.  She is currently under care and being treated for this.
>
> At the present time she is unable to work.  Any assistance you can provide her would be greatly appreciated.

(Id.)

In discrediting Dr. Jurgens' opinion, the ALJ appropriately reasoned that a treating physician's opinion need not be accepted where, as here, it is brief and conclusory in form, with no clinical

/////

findings to support its conclusions.  See Young v. Heckler, 803 F.2d 963, 968 (9th Cir. 1986).

The ALJ also noted that the letter was not supported by Dr. Jurgens' generally unilluminating treatment notes.  (Tr. at 252-66.)  In this regard, one such note says that plaintiff is "mostly doing well ... generally OK, just wants to lose some weight."  (Tr. at 257.)  Another treatment note from Dr. Jurgens reveals that plaintiff "wants letter for Social Security Office stating her condition and that she is presently not able to work."  (Tr. at 256.)  The conversation referred to in this note apparently prompted the brief letter of September 29, 2000.

Finally, in discounting Dr. Jurgen's opinion the ALJ appropriately relied on the evidence set forth in detail above which establishes that plaintiff's seizure activity was controlled with medication.[3]

/////

---

[3] It should also be noted that Dr. Jurgens' use of the term "seizure disorder" is probably inaccurate.  (Tr. at 253.)  Dr. Jurgens is an internal medicine specialist.  (Id.)  Plaintiff's neurologist, Michael H. Deshazo, M.D., has assessed plaintiff with "syncope and near syncope of uncertain [etiology]."  (Tr. at 243.)  He referred to plaintiff's spells as "unusual episodes" involving no loss of consciousness.  (Id.)  According to Dr. Deshazo's description, plaintiff

> feels like she is on a fast moving elevator that is dropping fast or a roller coaster.  She will feel flush and faint.  She has had tachycardia in the past.  I suspect her symptoms are not neurologically related.  I do not think she has a seizure disorder and other witnesses have felt that these have been pseudo-seizures in the past.

(Id.)

10

1        Accordingly, the court finds that the ALJ properly
2   discredited the assessment of Dr. Jurgens based on specific and
3   legitimate reasons supported by substantial evidence in the record.[4]
4        Plaintiff's next argument is very brief.  In a paragraph,
5   counsel asserts that the ALJ's hypothetical question to the
6   vocational expert was flawed since it did not include the limitation
7   that plaintiff not be left alone in a work environment.  This
8   argument is based on a short letter dated April 2, 1998, by one of
9   plaintiff's treating physicians indicating that plaintiff "should not
10  be around hazardous machinery <u>or in a work environment alone</u>.  She
11  should stay away from areas where if a seizure should occur serious
12  injury would not result."  (Tr. at 220, emphasis added.)  Plaintiff's
13  argument based upon this letter is unavailing.
14       In his hypothetical question to the vocational expert, the
15  ALJ stated, in relevant part: "The individual would have to observe
16  routine seizure precautions, such as avoiding dangerous heights,
17  unprotected machinery, the operation of automotive type equipment,
18  <u>that sort of thing</u>."  (Tr. at 117-18, emphasis added.)  Thus, the
19  ALJ's list of routine seizure precautions obviously was not intended
20  to be exhaustive and the court finds that the hypothetical question

---

[4] Plaintiff suggests that "clear and convincing reasons" were required to reject Dr. Jurgens' opinion.  Here, however, Dr. Jurgens' opinion is not uncontradicted since a consulting physician found plaintiff capable of work activity.  (Tr. at 311-18.)  Accordingly, since Dr. Jurgens' opinion is contradicted by another doctor, the opinion may be rejected based upon "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." <u>Lester</u>, 81 F.3d at 830 (citing <u>Murray v. Heckler</u>, 722 F.2d 499, 502 (9th Cir. 1983)).

11

in this regard adequately accounted for the limitations opined to exist by plaintiff's treating physician in 1998.

Finally, plaintiff argues that the ALJ's hypothetical question to the vocational expert did not account for plaintiff's alleged mental limitations. More specifically, plaintiff argues that those mental limitations were not accounted for because the ALJ did not further develop the record as instructed by the Appeals Council in its 2002 remand order. This argument lacks merit as well.

With respect to further development of the record, in its remand order the Appeals Council advised that the ALJ should obtain updated medical records "as appropriate." (Tr. at 46.) The record shows that additional medical evidence was indeed received at the second hearing as well as during the thirty-day period following the hearing. (Tr. at 4, 101, 115, 118-19.) The ALJ considered all of that evidence and gave particular attention to the evidence regarding plaintiff's mental health in accordance with the Appeals Council's remand order. (Tr. at 25-27.)

The Appeals Council further advised in its remand order that the ALJ obtain a consultative mental status examination, medical expert testimony, and/or vocational expert testimony if it were necessary in light of the expanded record. (Tr. at 46.) Although plaintiff suggests to the contrary in her motion, the Appeals Council did not <u>require</u> the ALJ to obtain any specific type of evidence from plaintiff's treating physicians, such as "Medical Source Statement of Ability to Do Work Related Activities," or a consultative mental status examination. Further, an ALJ is not required to obtain such

12

evidence under the applicable regulations.  An ALJ should seek additional evidence or clarification from a claimant's treating physician when a report from that physician "contains a conflict or ambiguity that must be resolved, ... does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1).  See also Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001)("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.")  Such an ambiguity or insufficiency in the evidence may also require an additional consultative examination.  See Reed v. Massanari, 270 F.3d 838, 842 (9th Cir. 2001).  Here, plaintiff has not even attempted to point out any ambiguity or insufficiency that would require still additional evidence and/or a consultative examination.  Nor has the court been unable to identify such an ambiguity or insufficiency in the 632-page administrative record.

For these reasons, the court finds plaintiff's contention regarding the development of the record to be unpersuasive.

**CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

2. Defendant's cross-motion for summary judgment is granted; and

/////

/////

13

1    3.  The decision of the Commissioner of Social Security is
2  affirmed.
3  DATED: September 26, 2005.

  _____
  DALE A. DROZD
  UNITED STATES MAGISTRATE JUDGE

DAD:th
Ddad1\orders.socsec\hall1181.order

14